Case number 24-5155. Friends of Animals v. United States Bureau of Land Management, an agency of the United States, and State of Utah. Ms. Best, Court of Appellants. Mr. Peterson, for Appalachian U.S. Bureau of Land Management. Mr. Giller, for Appalachian State of Utah. Ms. Best. Thank you, Your Honor. May it please the Court. I'm Jennifer Best on behalf of Friends of Animals, and I'd like to reserve one minute for rebuttal. Today, I'd like to emphasize the importance of this case because the open-ended decisions to round up and remove wild horses eliminate valuable public input and disregard important safeguards that Congress put in place to protect wild horses. Can I start you where we have to know you can satisfy us, jurisdiction? The case law is pretty strong. In a remand order like this, there is no jurisdiction that the Court has, and that has been stated in very strong terms by a number of our colleagues over the years. I realize that it can go both ways, but I don't understand, using the analysis that's appropriate, what you would effectively be denied if we said we don't have jurisdiction now, because when you look at what the District Court is ordering, the District Court is simply saying there are things you have to go back and do, make sure you do them appropriately, but that's it. And in the cases that I've looked at, we've done it more than a couple of times. There's no jurisdiction here. Well, Your Honor, under the four sort of factors of jurisdiction, it does indicate that we do have jurisdiction. I think the issue is when the Court issued a final decision, it gave jurisdiction back to the agency. It said, this is final, it's not going to make another decision, and essentially said that BLM can continue to round up and remove horses as many times as it likes until it achieves an appropriate management level. No, it's actually, it actually says a number of things that can easily be challenged by you folks later on. If the guidance or the questions raised by the District Court have not been effectively attended to, conduct the required gathers promptly as reasonably possible. That's a potential fight later on. You can't take an entire decade to act, but there's nothing indicating you must act within eight years, nine years. You must use then available inventory when you do gather again or propose to gather again. These are all things where the District Court is sending things back to be attended to, and that's exactly the kind of cases I understand the case, although we said we don't have jurisdiction to take this. Well, Your Honor, Friends of Animals' concern is that each time BLM makes a decision to round up and remove horses, it should comply with certain statutory requirements. The District Court said it was okay that it doesn't comply with those statutory requirements every single time it rounds up and removes horses. It remanded back to BLM, who has not made any indication that it's going to change its decisions. These decisions are still in effect and will remain for years, and it can conduct a separate roundup to remove horses under those decisions. Do you think on remand, the BLM could lawfully just leave these orders in place with an extra explanation? Just, you know, they say a bunch of more words about how hard it is to manage these things. It's oh, so terribly complicated, and we really need a decade, so we're not changing anything. Do you think that would be lawful under the District Court's opinion? Well, Your Honor, that is what BLM's doing, and our concern is- They haven't decided yet. It's pending on remand, right? Well, on remand, BLM's position is that it can keep rounding up horses, and we've seen them in other cases. They are continually rounding up horses, and I think our concern- Okay, but the District Court's opinion, you know, it's sort of a Goldilocks opinion, right? He says there are extreme positions from the parties, and yours is you only get one gather or round up, and theirs is they can take 10 years. And he's saying neither of those extremes is right. There are a whole bunch of line drawing problems about how long is too long and how much information you need, and he sends it back to the agency to work all that out. It seems like, you know, if one of the major inquiries on finality is, is the nub of the controversy still open on remand, it seems like a textbook case where lots of core issues are still open. Your Honor, I think the core issue for Friends of Animals is that on their face, these decisions violate the law. That core issue was resolved by the District Court's opinion. He said on their face, it does not violate the law. He claims that Friends of Animals- No, I don't think he said that. He said, he said, does not violate the law merely because more than one gather is allowed. Correct, Your Honor, and that is a core issue that Friends of Animals disputes, and we don't think our position is extreme because this is the position that the Bureau of Land Management took for nearly 50 years and is only now changing it. Fair enough, but let me give you one other consideration. So broad, broad range of discretion still open on remand. And the other one is whether or not it's extreme, your position, your position on one end of that spectrum will be fully open for you to pursue on appeal later. Well, no, Your Honor, because respectfully, the District Court judge said, you know, he's drawing the line in the middle and that on their face, these decisions don't violate the law. This is a core dispute that Friends of Animals has. We believe these decisions on their face do violate the law. And it is significant. I think you're over reading the opinion, but even if I'm wrong about that, it goes back on remand and the agency shaves 10 years down to 8 or 5 or 2 or whatever, right? You go up to the District Court and he says, that's okay. And then you take the appeal and argue everything you've argued to us, right line rule, one gather only, immediate means immediate. And all of those issues are teed up for us later. Well, Your Honor, one thing I'd like to point out is that the District Court said this was a final appealable order. BLM doesn't dispute that. You have the formality of the order in your favor, but he doesn't have final say on what satisfies 1291. And the practical implication here is that BLM doesn't issue a new decision in remand. It lets the course of 10 years run and Friends of Animals is stuck never being able to appeal these decisions. And it's every indication, what's what decision is it to? I don't know what you're talking about. So they let it run. You're talking about the 10 years. Yes. Yeah. So, then the decisions, the Friends of Animals can't challenge the decision. The fact that BLM is can continually round up and remove horses in these 4 HMAs have to do a new plan at that point. It's a 10 years run and that's going to be subject to review. That's what's so odd about this case. I mean, the 10 years is almost done. Well, I think I'm not sure what is it that you want that anytime they think about a gather and reduction that has to be subject to full process. Is that what you're saying? Anytime they actually remove horses, so right now, what could happen is next year, they're going to say, we're going to remove 1000 horses with no notice to Friends of Animals. No consultation. We try to go to the district court and they say, this decision has already been decided and we have no, that would be subject to. You could go back to the district court. Your honor, we can't because they're not going to issue a new decision. They're relying on the decision statement. Some, it's not going to be in hidden. Someone is going to know they made a decision to round up and reduce. Well, according to BLM, they could make that decision about what BLM says. I'm saying what the district court was suggesting. There's some guidelines. You can't take a full decade. Do it promptly as reasonably possible. Don't ignore material new information. Then available inventory and other information. So using those considerations, you could come back in and say, no, they are now suggesting they're going to do a gather and reduction and the district and they have not followed what the district court suggested they needed to consider. So we're challenging it now and they cannot pursue this. Gathering reduction, because they're not doing what the district court said they had to do. They can't just rely on the 10 years. They have to take the information that's available to them at the moment that they're proposing to do something. This court's very clear on that. And you clearly could come back in your honor. Respectfully. We don't agree with the standards that the district court set. That's what we're here appealing. And what standard is that? So we, according to the wild horse and burrow act, BLM has to make a determination based on an existing population that removal of excess horses is necessary and it must consult with independent parties when doing so. So we think that standard laid out in the law is what should apply, not what the district court said. And so, because these decisions on their face exceed that, they're not limited to an existing overpopulation and they're not consulting with individual independent parties when they're making them. That is our concern. And that is what we're asking this court of appeals to decide. And as a practical matter, which is a consideration in jurisdiction, when BLM says we're going to remove a thousand horses next week, Friends of Animals doesn't have time to challenge that decision. And arguably, we wouldn't have jurisdiction because our concerns are that the standards set out in the act should apply and not the standards set out by the district court. If you were right, wouldn't any district court order in an APA case remanding without vacature be immediately appealable? Well, your honor, if the party that's established the need for a remand, but not getting vacature can say, well, gosh, the order is still in effect and bad things might happen to me in the interim until the agency cleans up the remand. It kind of depends on sort of what the remand is. And if it's clear that the judge is saying you have to meet these certain requirements, and the plaintiff doesn't dispute those specific requirements, then it's possible that the remand order is not immediately appealable. But here, where we're Friends of Animals does dispute the standards set forth for remand, then it is immediately appealable, especially when we would not have an opportunity to litigate those on remand because the district court set different standards. So we can't go back to the district court and say, we disagree with this because of our concerns with the Wild Horse and Burrow Act, because the district court would say, I already said that was okay, that they have some discretion in the middle where Friends of Animals is appealing that. Oh, in fact, the act doesn't give them discretion. What is the legal standard that you feel must be overturned? We believe that on their face, if the decisions go beyond an existing overpopulation, and what was necessary at the time of the decision, then those on their face violate the Wild Free Roaming Horses and Burrows Act. Are you talking about the decision with respect to the original plan? Because we're not talking about the appropriate management levels, those are fixed, right? So you have lots of variables after the appropriate management level is fixed, then you have plans. And are you suggesting processes required when the initial plan is established pursuant to the management level, and they can reduce, you've gotten notice, you participated in that process in determining what should be in the plan, and then they act. Now, you know as well as I do, you can't always achieve it fully just given the wilderness and the problems out there. You don't always meet the mark, right? So they're going to be follow ups. And indeed, that's clear from the record. So you may have, you may want to reduce by 100 horses, but because of a lot of variables, everyone realized it was not possible to get 100 horses. So we're going to continue that a little bit later. Now, are you saying when they continue the discharge court, what are you saying? You surely contemplate that possibility, right? Yes, I'm saying it has to be a new process to go through the whole thing again. We couldn't get the original 100. Your honor, so what BLM did for nearly 50 years each time. So my I don't care what they did before what we have now. I'm sorry. I don't mean to be impatient, but I really am impatient on this one because I'm not getting it. What is it you're concerned about? You have an original, the AML, you have the plan and then they act pursuant to the plan and process was clearly given you participate in everyone agreed. We're going to try and reduce and eliminate 100 horses. It doesn't work out for perfectly reasonable reasons. It doesn't happen. So that plan to get rid of those 100 is going to be delayed. It's going to happen a little bit later and they come back and say, okay, we're going to do it. Now. We're going to get the additional 75. you're saying it has to be new process now. Well, your honor, these decisions don't say, we're going to remove 100 horses. They're going to say, we remove horses to a set target. So the decision. It's kind of open ended, so maybe initially they said, we think there's 100 access horses and then 5 years later, they're going to say, actually, we're going to remove 500 horses. And the public doesn't get any input in that and Congress foresaw this and they're currently available information at that time because it doesn't seem like there's a specific. Mark, you know, like, quarterly or annually or right? So, Congress, you look at legislative history, they expected that these would be annual determinations and they are supposed to look at currently available information, but they're also supposed to consult with independent parties. So, 5 years down the road, if they decide, oh, now we think there's 500 access horses that should be reviewable and the public should be able to get input in that. Public involvement is going to take a year and a half and now they're ready to act after the year and a half. You're going to come back and say, no, no, you can't act because you have to do it again. Because circumstances have changed over the year and a half when you were consulting with the public. Is that what your argument is? So, a year and a half, you're saying they're getting what they want to reduce now. After the original plan was played out as well as it could be. Now, time goes by and they say, we want to continue now with a reduction. You say, no, no, no, you have to have process and we have to be involved. Okay. You have it. And you fight over how many more what circumstances have changed. You finish a year and a half later, because that's how long these things may take. And then at the end of the year and a half, you're going to say when they say, okay, we're going to now move. You say, no, you can't because circumstances have changed during the year and a half. So we have to do it again. When does it end? No, your honor, I think you see what I'm saying. When does it end? I see what you're saying. But I think 1 thing that you're misunderstanding is that the Bureau of land management is changing its decisions, not friends of animals. The Bureau of land management is saying 5 years down the road. We now think there's a different excess number. So our concern is that when it makes that new decision, I totally understand that when they make the 2nd decision after the original plan, and they're acting on the original plan, then they make it and you want to be a part of that. And I'm saying you're a part of it, but it takes a year and a half to be a part of it. And now they're getting ready to act again and you say, but wait, there was a bad winter during that year and a half when we had notice and comment and things have changed and a number of horses have passed away and fertility is different. So you still can't act because we have to participate again with you. When does that end? Well, your honor, that is not the situation here, but I think all that I would say, and, you know, once. 1 place to draw the line is BLM says it needs to remove 100 horses. Once it's removed 100 horses, it can't go back and then say, we need to remove more without that process. No, respectfully. Your honor. The district court tied the decisions to the appropriate management level, rather than an existing overpopulation. So that is what friends of animals disputes is that. BLM can't go back and remove horses merely based on appropriate management level and BLM concedes this in the 10th circuit and has said, just because the population is over the set target. Doesn't mean they can remove them, but under these decisions, and under the district court's opinion, BLM could go back and continually remove more horses than originally proposed in its decisions solely on the AML. That after making a necessary to remove excess animals determination. Well, you can't just do it on a win. You have to make the determination. I'm just reading from the district court. They can't just on a whim say, well, let's, let's remove some now they have to make the necessary to remove excess animals determination. Well, right and they say you have to consider. New information that is now before you in doing all of this, and you may have to have real process, depending upon what's going on. What the issues are, which means you would be involved again. It depends on the situation. Well, respectfully, your honor, the court is the district court. Kind of said, yes, BLM can decide when there's new process. What we think the act requires is that once it's completed 1 round up, then it needs to have additional process. Even if it didn't cheat, even if it's the target level, it claims it hasn't achieved if it removes the horses that it identified as access in the original decision. Then it should have to do that new process. The problem with these decisions is on their face. They're not limited to an existing overpopulation on their face. They allow BLM to adjust the target removal numbers as the years go by. And that adjustment is what friends of animals concerned because that's what. Congress required certain safeguards for Congress required that BLM consult independent parties. Congress required that it makes a determination that the overpopulation exists and that removal is necessary. And the district court said that the agency cannot ignore material new information that comes to its attention over time. Yes, your honor, but not ignoring material information and consulting with independent parties. They may be required to have process, depending upon what it is they're looking at at any given moment. And that's where you can come back to the district court because you may be at a place where they're saying we want to have a reduction. We want to have a gather and a reduction. And we think because of X or Y, and you're saying, no, no, no, you have to have process. This is 1 of those situations. Where process is required, they say not happening district court clearly invites you to come back and you can make that challenge. Well, can I point out 1 other thing that the Supreme Court has said in guidance on this in the. Department of Homeland security versus regions of Southern California is that when an agency makes a new decision, it's a fundamental principle of administrative law that they have to explain their reasons for doing so. And they have to issue a new decision that gets taken away under the district court's order and opinion, because now the burden is not on BLM to defend its decision. It's on friends of animals to say things have materially changed and to bring this appeal. You know, in a matter of days, because BLM doesn't commit to providing any notice to the public, essentially forcing litigants and the courts to chase a moving target that violates the administrative procedure act. And that violates what Congress intended when it put these safeguards in the wild free roaming horses and boroughs act, it wanted the agency to provide this information to consult with other parties. And I noticed that my time has passed, so I'm happy to answer more questions, but I will give you some time. Thank you. Your honors. Mr. Peterson good morning. Your honors. Did you give us the federal government's view on finality? Yes, your honor. That's what I was going to start with. May it please the court. My name is Ezekiel Peterson with me to council table is Steve Gary representing state of Utah. My plan is to speak for 8 minutes before turning it over to Mr. Gary. I'm hesitant to get too far out over my skis on jurisdiction just because we didn't brief it and we didn't contest it. What I think we have to decide. I'm aware to have the federal government's views. Let me start with how BLM construes the district court order because I think that shades the jurisdictional discussion a little bit our understanding of the district court order. And I think this is consistent with what the plaintiffs have said is that. The other plans are still left in place insofar as they allow BLM to remove wild horses down to in these herd management areas. So that is still in place. BLM did some of that work, I believe, after this decision came out and that's, of course, subject to the limitations that the district court put on those. Gather decisions that the order of pages 50 to 51 saying, you know, they still have to be conducted as promptly as reasonably possible subject to the statute. They can't be based on information or consultation that's materially out of date, but the government can still go forward and remove wild horses down to AML. They can't do maintenance after that, of course, and we don't contest that, but we can gather down to AML. So, with that, I mean, I'd like to focus on you think the government have any obligation under the remand order to. Amend the plans, I think insofar as the government. I think our understanding of the remand order is that we have to amend the plans if there are some sort of material changes in condition or changes in consultation, or if the government wants to do anything beyond gathering down to AML. But other than that, no. I'm not sure it is critical for jurisdictional purposes, but I had read it to require you. Clean up the plants, but insofar as he found them. Essentially, I think our position has been that. That is confined to the portions of the plans that I discussed, not the portion of the plan. That is just a straightforward gather down to AML as reasonably fast as possible. No, but after he knocks out the maintenance part. He says separate and apart from that. No cart launch to conduct gathers years from now. Yes. But, because the Bureau is better situated to draw those lines in the 1st instance, the court will remand to the Bureau, which can revise the decisions to clarify which future gathers will require for their process. Understood your heart and I can discuss that with my client. I can't ignore material new information that comes to your attention over time. That's correct. And we don't dispute that. That if material new information comes into play, BLM is not allowed to conduct further gathers without considering that material new information. That's not an issue on appeal. Neither BLM nor you have to make the necessary to remove excess animals determinations. That's correct. I thought the district court also said in some situations. Given the circumstances, you may have to have new process. That's correct. When material new information comes into play and we don't dispute that. That's not an issue in this appeal or when there's very substantial delay. That's also correct. And that goes to the statutes requirement. And that they can come back to court if they disagree with what you're proposing to do. And they're making a claim there's new material information, which they've totally ignored. Ignored the necessary to remove determination makes no sense. They can challenge you. That's correct. Your honor. I think they would have both administrative and judicial remedies. Insofar as there is some sort of new, they allege there's some sort of new material, new information. Let me just make it clear. I didn't I didn't think this was a case. I don't mean to sound frivolous with this, but this doesn't happen that. Someone out there says, let's reduce, let's get rid of 100 horses. It's Sunday and they say, well, let's do it Tuesday. Don't tell anybody anything move quickly. No, your honor. That isn't what's going on. Is it? No, your honor. In fact, my understanding is there's a lot of opportunity for the public to come out and observe these gathers. These gathers are planned months in advance because, of course, they're subject to significant constraints around on the ground conditions around the agency's funding. So, the agency has a schedule of gathers that are scheduled to happen. The only reason I'm raising it is because they're concerned about not being able to object or raise challenges to raise questions that the district court has raised can't be met because there's no time. That's not the picture I'm looking at. I think that's not correct. Is that right? No, you're yes, your honor. We would agree with you that just the practicalities of how these get their decisions are implemented. It means that there would be time for for friends, families to raise objections insofar as they think there's some sort of new material information that the agency needs to consider. So, I had, I had thought you had to amend the plans, but I see how you're reading this. So, let's assume you're right. Then the way judicial review would work is. The plans are what they are, and there may be as applied issues in the future. And when you do a subsequent gather. Pursuant to a plan that is. Separate agency action, and someone like friends of animals can go to court. And say that it is either unlawful or inconsistent with the district court remand order. Yeah, I don't want to get in trouble by stating for the government that follow up gather is necessarily an agency action that is is challengeable under the APA. If you don't say that you're making your jurisdictional case harder. Because if you have neither a plan amendment, nor. A later agency action, then it sort of looks like they're going to have a tough time getting into court later. The way that I was thinking about it, that the government was thinking about it was that if there's some sort of material change in condition or change in information, or if friends of animals or a plaintiff group believes that there's some sort of unreasonable delay under statute that they would have the opportunity to go to court. And then they would have the opportunity to petition the agency under the APA, and then that decision would be would be reviewable judicially for unreasonable delay for the agency agency's response to that petition would be reviewable under the arbitration purchase standard. And sorry, what's the petition they petition not to do the saying either. There's this new information that BLM has not considered. It's the precipitating event. That's what my colleagues asking. Is it the. Proposal to gather, or is it the necessary to remove decision, which would, I think, follow the gather right? The necessary to move. I think the gather before you make the necessary. I'm asking you gather before you make the necessary to remove decision, right? You, you make the necessary to remove decision before you gather. Okay. Yeah. There's an excess determination. Right? Yes. And then, so what's the starting point is what. My colleague is asking, what is it that they can 1st object to the necessary to remove decision or the gather decision or what? I think in this hypothetical, we're assuming that there's a gather plan. Like, the 1 issue here that kind of authorizes some sort of actions in the future, not just 1 individual gather. So, I suppose it would be the schedule gather that is coming up the BLM's decision that they're going to. To institute a gather that is premised on a necessary to remove decision. Yes, premise on the 1 that's already been made on your view. You don't need to reconsider. That's correct. Our view. We don't need to reconsider absence. We don't need to reconsider absence in some sort of material change in circumstances or new information. Yes. So, you've got the decision that basically said remand order is not final, but what about how do you interplay those 2? Yeah, and again, we didn't brief this, but my understanding is this is more in the category than the North Carolina fisheries category. The district court's order here, and I think the way we've been reading the order, friends of animals has been reading the order. Is it still authorizes BLM to continue taking this action in a way that they disagree with? And has BLM ever achieved these appropriated management methods? My understanding, based on the most recent data I've seen from the agency, is that in some of these, they have, but in say, the Eagle complex, HMA, the appropriate management level is 145 to 265 and as of March, there were still 2300 wild horses on the ranch. So, are these still ongoing? I don't believe that the gathers are ongoing under these specific plans, but I would have to check with the agency. I see that I'm out of time. I can speak briefly about the merits of this case if the court would like me to or answer any questions. BLM suggests that these appropriate management levels don't have to be based on current information. You want to speak to that? BLM suggests that, no, BLM agrees that when the agency makes the overpopulation decision, it has to do that based on current information, and it did that here. If you look at information as is available to the agency when it makes the determination, I think it's crucial to see these decisions at JA 851. It says, without action, this extreme overpopulation of wild horses on the range will result in deterioration of rangeland resources, destroy native vegetation, plant communities, could result in danger of human safety as horses expand in range and go into public highways. I think that the information doesn't seem current, so to speak. Like, you have a time period in which you're acting on currently available information, but then the removal of the excess could come way later. And so, is there a sense that you're not technically acting on currently available information? I mean, I think that goes to what the district court said as far as whether there's a material change in circumstances. And here, no one has alleged that that's been the case. I think these ranges are still in a drought condition. It's still a case that they're drastically overpopulated with wild horses, and some action needs to be taken. My biggest problem with your merits position is the requirement right in the statute that the removal happen immediately. Yes. That's a strong word. I agree with you. You've made a great case that there are all sorts of exigencies, and maybe we need a degree of wiggle room in how immediate is immediate. But is there any rational view of the world under which immediately means a decade? So, I would have two responses to that. One, a textual response about another bird in the statute. Yeah, give me the textual one. One is a blush on the word immediately. The textual one is that in that same subsection, section 1333b2, it seems to contemplate that gathers to achieve AML will not happen all at once. So, once BLM... Yeah, fair enough. That's right. It states that action shall be taken, quote, until all excess animals have been removed. So, I think that necessarily recognizes, in a case where you're removing 2,000 wild horses, and Judge Edwards alluded to this, the geography of the basin and range in Nevada and Utah means that you just can't do that all in one gather. You can't do that with one helicopter. It also says BLM is to proceed in a specific order and priority, assuming step-by-step. That's correct. Those A through C procedural requirements also contemplate that there's... Assume that step-by-step is over a period of time, and it's certainly not going to meet any reasonable standard of immediately. Precisely, Your Honor. And then the second... The blush on the word immediately is that the fact that an agency must start acting immediately doesn't mean that they have to complete their action immediately. I think the District of Utah recognized this in the Western Rangeland Conservation Association, where they said that the physical removal of wild animals just can't happen instantly. It can't happen at once. There's necessarily some sort of delay in doing that. We agree that the BLM, according to the statute and according to the amendments that Congress passed in 1978, can't wait forever to remove excess wild animals from the range that are causing damage and aren't in a thriving natural ecological balance. But it can't happen all at once, even though the statute says immediately. No doubt about that, but I'm not sure that gets you a decade. Fair enough, Your Honor. I think... And sorry, you said you had two points. Could you give me your second one? The second one was the blush on the word immediately that I just discussed. I think just to briefly touch on what you mentioned, the decade. These decisions are not saying that BLM is going to wait 10 years and then is going to start implementing them. They're simply recognizing because of practical considerations, it could take a while. And I will grant you, it does say 10 years. It could take up to 10 years. It authorizes up to 10 years of the decision. But BLM is still expected to start achieving that as expeditiously as reasonably possible. Judge Childs, any other questions? Okay. Thank you, Your Honors. You're from Utah. Mr. Geary. Thank you. It pleases the court, Steve Geary on behalf of the state of Utah. I do want to be clear at the outset, the state of Utah does join the Bureau's arguments, both in briefs and oral argument here today. Utah takes this brief time to address a couple of issues that were unique to the Utah brief. The first of those was Utah's standing, which I did clarify with counsel before this oral argument. The Prince of Animals has not abandoned their challenge to Utah standing, but I think they were inclined to submit that on the arguments in the opening brief. Unless the panel has questions specific to that, Utah would do that as well and submit on our brief on that. The other issue that was unique to Utah's brief was the issue that the panel is quite interested in, apparently, which is the mootness and the jurisdictional question. Well, finality, not mootness. Finality. Thank you, Your Honor. I think your position seems to me pretty strong, to be honest, but one possible fly in the ointment. I thought the best case on the other side was American Great Lakes. So can you just give me your- Well, and we discussed that somewhat in the brief. One point that I want to make out to this panel as well, though- I mean, it's a remand without vacature where the rationale for the immediate appeal is that the party that secured the remand didn't get the vacature and is going to be subject to harm. Well, and the party in that case is harmed by the remand itself. So in Great Lakes, they're very much, as I think we explain in our brief, they're in the same sort of situation that the federal government would be in in challenging the  Look, the remand itself is what is going to cause the harm to us. If we cannot have that heard now, then we never get the relief. Here, Friends of Animals actually had three other claims in this litigation that the district court finally disposed of. Those are their claims. Number one, to the- Sure, but let's just focus on the remanded claim. They're saying, as of right now, the situation on the ground is BLM can continue to gather. BLM can continue to gather, subject to the provisions of the panel is already well aware. Fair enough, but their legal position is no future gathers without full process, period, full stop. But no one knows what BLM will actually do until after the remand and the plans are revised according to the court's order. What we have here is not a complete agency action anymore. We have an agency action in which the district court has poked some rather significant holes in it, and although parts of it have been left intact, nobody knows at this point what BLM will retain of that after it remands and reconsiders. The only parts that- Even though they've just represented that they don't have to formally amend the order at all, and they can just keep going and- Well, they can keep going- Maybe eight years from now, they'll hit the speed bump on immediately. Except these are 10-year plans that were passed in 2017 and 2018, and as Judge Edwards noted, we're coming up, and this is not an immediate process. Notwithstanding the immediacy of the statute to implement it, there's still notice for individual gather, and these are published on the BLM's website. The public and Friends of Animals does have the opportunity to address specific attempts at harvesting horses and challenging those in the court, and they can still raise those claims in regard to that. But the reason I brought up the other claims that the court finally disposed of is those claims, the NEPA challenge, the Inaqui Roundup, and whether or not the Bureau is complying with its past regulations or not. Those have all been abandoned on this appeal. They're referenced nowhere in that bill. So those points, they are final decisions. The court would have jurisdiction to do them, but Friends of Animals has not brought them to this court. What it has brought is its challenge to the Wild Horse Act. I'm not sure how that helps you, but I don't think it hurts you. Judge Childs, any other questions for Judge Edwards? Other than that, we will submit and ask that the court affirm. Thank you. Ms. Best, we'll give you some minutes. Thank you, Your Honors. The one thing I wanted to emphasize real quick is the Supreme Court said in Lumnia that the final finality requirement should be evaluated based on the practical effects of the district court. And in practice, what can happen right now is next year, BLM decides to round up and remove 1,000 horses from the Eagle Complex herd management area. Horses will die in this roundup. Horses will lose their freedom forever. BLM is not going to issue a new decision. BLM has not committed to provide any specific public notice. BLM has not committed to consult with independent parties. We think all of these requirements should apply, but BLM instead is going to rely on decisions issued in 2017 and 2018 that are at issue right now. So, as a practical matter, Friends of Animals can't go back and challenge those decisions. And BLM will argue there is no new final agency action. And because this didn't come up— And they're going to act pursuant to the original plan. They will act pursuant to the original plan, correct, Your Honor. And because BLM didn't dispute this, I don't believe it's part of the joint appendix, but it is a part of the record. There was some discovery done in the district court because the district court also had questions about jurisdiction. And in response to interrogators, BLM admitted that it finds that the notice that was required happened back in 2017 and 2018. Any public comment happened back in 2017 and 2018. Therefore, it doesn't think it's required to do that when it does a roundup in 2026. Friends of Animals— Is it remotely realistic that they can engineer a roundup, which seems to require lots of planning and lots of logistics and lots of people involved without your knowing about it? Yes, Your Honor. They will—you know, they can contact contractors. They can request funding. And in fact, this happened with past roundups, all internally without notifying the public. And because these are separate, distinct roundups where BLM has to request funding every year, it has to get approval. It has to get a contractor. It's for those distinct roundups where Friends of Animals saying, hey, this is where the law applies and where you have to get public input too. So it's these distinct roundups that Friends of Animals says the requirements of the Wild Horse and Burrow Act apply. We know BLM has an extensive internal process. So why can't it also comply with the Wild Horse and Burrow Act each time it's determining to round up and remove horses? Are they proposing, as far as you understand, to round up and reduce pursuant to the original plan numbers? Your Honor, so the original plan—this is another concern—doesn't have specific, like, excess numbers that they're going to round up and remove. It leaves that open-ended so it can decide in 2026, now we want to remove 1,000 horses. And it didn't disclose that back when it issued the original decision. So clearly, that harms Friends of Animals because we have no opportunity to say this amount of horses shouldn't be rounded up because— I mean, you're making an argument. You're doing it implicitly. But I think it's pretty clear to me. You're suggesting that this could happen and you would not have notice to get back—enough notice to get into the district court to challenge it. That just seems implausible. And you've got to say or do more. Tell me something or point me to something to convince me. There's no conceivable way that I'm going to know that they're about to do a roundup and reduction involving 1,000 horses and they'll have it done before I can get back to district court and say they're violating the mandates of what the district court addressed in this case. That just seems—being very honest with you, that seems implausible to me. That you would have no opportunity to raise that in district court? Well, I think there's two issues that I'd like to address about that question. First of all, we disagree with the district court standard. I hear you, but let's assume it's there, all right? Would you just do me a favor and answer the question in plausibility? I'm not facially buying it when you suggest there's no way we could get to the district court in time to raise this concern and block it if we had a legitimate claim. Yes, and your honor, I think, you know, if it'd be helpful, I can submit additional material from the district court record that where BLM says we're not required to provide any notice. Counsel, no, you're missing my point. We're looking at the district court's decision. So whatever interactions went on, they're fine, but we're looking at the decision. The district court said you have to take into account new information, prompt and reasonable, and maybe times when you need process, you can't ignore material new information. You're hypothesizing they're about to do something that's going to violate those standards. And I'm saying to you, you go back to the district court and say they can't. So your honor, if there's no requirement, they don't perceive any requirement for public notice. That's the fight. You're going to go back. You would make the argument. This is totally unreasonable. It's not justified. They haven't considered new information, and they haven't talked to the people who might know something. You may not win it, but you're certainly not foreclosed. And more importantly, you're not going to be out of time. Your honor, there's nothing precluding them from telling the public on Friday afternoon, we're going to start this roundup, a helicopter roundup on Monday. Okay, so I think that will plausibly that could plausibly happen. Yes, your honor. I do think that could plausibly happen. And maybe if it's not Monday, okay, we'll do it Tuesday or Wednesday. And how is friends of animals like, yes, as a practical matter to talk to our members on the ground to say, what are the conditions here? What did BLM get wrong when we don't even have a record of their decision? And we need to brief this before the district court as a practical matter. We can't do that. And especially when BLM is going to say, look, we're relying on the decisions in 2017 and 2018. We don't need a new record. We don't need a final agency action. So as a practical matter, friends of animals can't get to the court. Thank you, counsel. Thank you, your honors. Mr. Peterson, would you come to the podium for a moment? You've heard my question is, is my concern well taken? Is it possible that BLM on Friday, after doing everything behind the scenes secretly, could announce Friday at 5 o'clock? Oh, incidentally, Monday at 9 a.m., we're starting a roundup and gathering. I'm going to qualify my answer. But I don't think that would happen. I can certainly talk with my client and submit a 28-J letter if the panel would find that helpful. But based on my understanding of just the practicalities of organizing, as well as how far in the future these things have to be planned and are made available to the public, there is a public gather schedule. That would not happen.  Thank you. Thank you, your honors. The case is submitted.
judges: Katsas; Childs; Edwards